May it please the court. My name is Cal Potter. I'm the attorney for the Nisha Bojic and her son, the decedent Zaim Bojic. Knowing that the court is familiar with the facts of this case, in addition to having us brought before a joint group with other civil rights death violations, I wanted to focus, first of all, on our argument dealing with the fact that the court denied the jury instruction dealing with the Diorley case, dealing with the fact of what really is the totality of the circumstances of this case, that our client was emotionally disturbed and recognized to be emotionally disturbed by the officer before implementing force. And looking at it from a broader perspective... You're entitled by the substantive law to a pinpoint instruction that the jury should consider one of several circumstances to wit the mental disturbance of the victim, along with a mention of all the circumstances... Yes, we are. You were saying... Now, do you have a case that says in a non-criminal case, in a 1983 case, the plaintiff is entitled to a pinpoint instruction as to certain evidence to the jury, which could be argumentative in the form of the instruction. Do you have a case that says that you're entitled as a matter of law to a pinpoint instruction? It's not sufficient, it's not given to the discretion of the trial judge? Well, in terms of what you're talking about, we're talking about substantive due process. The case that came down after our case, the Porter v. Orton case, talks about the totality of the circumstances. All right. But to say pinpoint... Maybe I'm not making myself clear. You know, when I say pinpoint instruction, I think we know what... Yes, sir. It means singling out a certain issue or group of facts and informing the jury that they should consider this particular group of facts or issues in determining the reasonableness of the conduct. Do we have any cases saying that you're entitled to that as a matter of law and not in the discretion of the trial judge? Well, Your Honor, in the sense that Diorle talks about the graying of factors and this should be a factor. Diorle v. Rutherford is the case that we're relying upon, which is a Fourth Amendment case, talks about that it's not necessarily what you're saying. That's the only thing you look at it, but it's one of the factors. No, no, no, no, no. Let me try again. I understand what you're saying. But do we have a case that says, in addition to instructing the jury that they should consider all the circumstances, the totality of the circumstances in determining whether reasonable force was used, they should particularly consider the mental condition of the victim? No, Your Honor, because one of the concerns, I think, was that there weren't going to be two different types of law, but that it would be simply a factor that the jury would be taking into consideration under the Diorle case. In this particular instance, the court relied heavily upon the Billington case, dealing with whether, in fact, something had occurred which triggered the use of the deadly force. In this particular instance, there were two different situations. One, the grabbing of Mr. Bojic prior to the time that he had done anything wrong. He was simply smoking a cigarette, and when asked to put out the cigarette, he put out the cigarette. He wasn't answering the officer's question in a fashion that apparently he decided. Now, let me ask you the next question. Were you able at trial to argue that the officer should have appreciated the mental condition of Bojic? That was our theme, yes, Your Honor. We did argue that. But we didn't have an instruction to support the argument. Well, that was one of the circumstances. You had an instruction that the jury should consider all the circumstances known to officer guess on the scene, right? Correct, Your Honor. And you argued, and quite properly, one of the circumstances is that Mr. Bojic was giving every indication of being not mentally well. That's correct, Your Honor. But what is important, and what this Court focused on in the Diorle case, was the fact that many times what an officer would do in a situation with an individual that's not emotionally disturbed would exacerbate the condition and, in fact... You were free to argue that exactly, right? That's correct, Your Honor. A reasonable officer guess under these circumstances, instead of offering force, should have offered counseling. What he should have done is he called for his backup or he called for his sergeant. He should have waited for that. There was no crime that had been committed. He was strictly enforcing laws of decorum. They were outside a Starbucks, and he had actually put out his cigarette, but they didn't want him there for whatever reasons. And those views were fully made known to the jury under the instructions given. They were made known under the instructions that we had given, but we didn't get the instruction that we had requested so that they would look at the totality of the circumstances, the true totality of the circumstances. Well, pardon me. Let me see if I got you right. The instruction instructed the jury to consider the totality of the circumstances. What you didn't get was pinpoint instructions saying, in addition, one of the instructions, one of the totality of the circumstances that you really ought to consider is the mental health of Mr. Borchick. That's correct, Your Honor. And one of the things I think is important is if you're going to look and be honest to the situation as a matter of dealing with emotionally disturbed people, that that is a factor that has to be taken into consideration. It's also a factor that has to be utilized in terms of the training of the officers so that they know that they're dealing with an individual. In this particular instance, there were friends that were also seated at the table that wanted to intercede that could have prevented the escalation of the force and Mr. Borchick's, ultimately, his life. So what we're looking at here is fair and due consideration as to the factors that make this case distinguishable from some of the other cases that are dealing with the use of deadly force. In this particular instance, focusing on the other part of the argument that we had in terms of the Monell claim, there was an exceeding of his authority. He provoked the fatal confrontation because he used greater force than the threat level. We submitted the affidavit of Deputy Van Vleracombe, our expert in this particular matter, to substantiate that not only the captain but the sergeants had both reviewed and testified to the fact that what he had done, as well as internal affairs had agreed upon, that what he had done in this particular instance as to all phases was appropriate, recognizing that he doesn't have to use the least force on the continuum, but he has to use force that meets the level of the threat. And that did not occur here. We had at least two instances that, indeed, the Court even found. You're arguing the facts. That's on the motion for summary judgment part, Your Honor. Right. And the — was this a part of Van Vleracombe's testimony which was not allowed because it wasn't revealed in 26? No, Your Honor. I'm focusing now on the Monell claim, which was part of the summary judgment. I see. And his declaration was attached at that point in time. But it dealt with the use of force and the fact that the force that had been utilized throughout the confrontation, one, had been initiated by the officer, but secondly, it was greater than the threat level. What was the customer practice that you proved under the Monell claim? That they had — internal affairs, as well as the captain and the sergeant all agreed that he had acted appropriately and pursuant to training and practice. So our argument was that we had a cognizable claim under Monell pursuant to the sworn declaration of our police expert, former — Now, that's a separate issue, is it? Yes, sir. If we disagree with your view on the jury instruction, we don't get to Monell, right? That's correct, Your Honor. Okay. If you don't find the violation by the officer, then indeed we don't get to the Monell claim. I would like to reserve — You certainly may. I appreciate it. You certainly do so, counsel. Very well. We will hear from the City of San Jose. Good morning. May it please the Court. My name is Cliff Greenberg. I am from the City of San Jose City Attorney's Office and represent the City and Officer Guess in this appeal. Counsel, could you speak up a little? I'm having some difficulty hearing you. I'm sorry. My name is Cliff Greenberg. I am from the City Attorney's Office of San Jose and represent the City and Officer Guess in this appeal. I don't think there's a whole lot to talk about from my perspective. The Monell — I can give you something to talk about. Thank you. Did the city have a specific policy that its officers were to follow when dealing with people who were mentally — had some mental disabilities? Because the officer testified that he realized there was some mental interplay here. So did the city have a policy? And if so, what did it provide?  Thank you, Your Honor. First of all, the officer did testify that he recognized the mental illness, but I think it's important to note that that recognition came only at the point where Mr. Boczek picked up a chair. So you're not dealing with a situation where you are aware beforehand on the way or even at a point where you can do anything. But even at that point, there are still certain steps that can be taken. So my question is, was there a policy that the city had regarding dealing with people once the officer became aware that there was a mental component? There are numerous policies. I think I'd be going beyond the record to talk about them, but there are numerous. Was there anything at trial regarding policies from the city that the city had? The officer testified — Wait a minute. This wasn't trial. This was a motion — I mean, was there anything in the record, I should say? No, the motion for summary judgment dealt with the Monell issue only. But there was a trial on this case. Okay. Wasn't there a trial on this case? Yeah. There was a trial on this case. Okay. All right. At the summary judgment level, the Monell issue was raised based on an allegation that there were improper training policies. There, however, were no improper training policies presented at that level, and the court rejected that argument and therefore granted — So your answer is that there was nothing raised by the plaintiff regarding policies that existed that were not followed? That's correct. If the court is asking what are the city policies, I could answer that, but it would be beyond the record. No, but it's fair to put it in the context of what the record says in court. So your answer is there was nothing presented in the record regarding policies that existed at the city on how to — At the summary judgment. At the summary judgment. That's correct. Right. And so nothing was raised at the trial regarding this issue either? At the trial, the officer was asked, were you trained on how to deal with people with mental conditions such that you would deal with them somewhat differently, talk them down, recognize that there may be some give and take that should occur? And he said yes. And that, I think, was the only reference to that at the trial, especially in view of the fact that by the time he recognized that there was a mental issue with this man, he was engaged in a fight for his life. I understand. Any other questions? Anything further, counsel? No. Well — Very well. Your Honor, I'm sorry. Simply back to the issue that seems to have been raised, which is the jury instruction issue, I just want to say for the record that the instruction was adequate. It gave the jury certainly a chance to assess all the circumstances, and it gave a chance for the plaintiff's attorney to address all the circumstances in argument and at trial. That's all. I just wanted to address that for a moment. Very well. Thank you, counsel. Mr. Potter, you have some reserve time. Thank you, Your Honor. I would just point out that at the summary judgment phase, what was being addressed was the fact that the officer was using more force than was needed to meet the level of the threat. That was the argument that was being made. That was the declaration that was submitted by the expert in references to the depositions of the captain, the cavalero, as well as the sergeant. So the argument at that point in time, which we were precluded from dealing with, it was dismissed, was the fact that internal affairs and the deed also sustained the fact that the officer was using, in this particular instance, more force than was necessary prior to the shooting. But didn't the jury decide that? Ultimately, the jury does make that determination, but not as to the Minnell claim. They talked about it in terms of what was occurring. An argument is that because they weren't given the totality of the circumstances, the full picture, then they really don't have the ability to make that decision. If they were told that that was one of the factors that comes into play, which is what this court seems to be saying in a substantive due process type argument, the Porter case that came down after our case, if you look at the true totality of the circumstances, then you can make a determination as to what actually took place. And I think the threshold was intent to harm at that point in time. So we're just asking for the same type of application in this particular case. Very well. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Rawlinson, Bea